IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

PHILIP AMMONS,

        Appellant,

        v.

KAISER FOUNDATION HEALTH
PLAN OF WASHINGTON, a
Washington corporation and
DUANGPORN JITJAI, MD, and
OVERLAKE HOSPITAL
FOUNDATION, a Washington
corporation,

        Respondent.

No. 88600-2-I

DIVISION ONE

UNPUBLISHED OPINION

BUI, J. — Philip Ammons filed a complaint alleging "medical negligence/ malpractice" against Kaiser Foundation Health Plan of Washington and Dr. Duangporn Jitjai (collectively "Kaiser"), and Overlake Hospital (Overlake). The trial court granted summary judgment in favor of Kaiser and Overlake, determining that Ammons failed to present expert testimony to establish standard of care and proximate cause. Ammons appealed, arguing that expert testimony is not needed because negligence can be inferred and his injuries were caused by negligence on a more probable than not basis. We disagree with Ammons' arguments and affirm.

## FACTS

Ammons was a patient of nephrologist Dr. Jitjai. In December 2023, he

was taking the prescribed medication losartan for high blood pressure. [1] Due to losartan's side effects, Ammons asked for a medication change and Dr. Jitjai prescribed new medication olmesartan. At the time, Ammons had "long standing diagnoses [of] high blood pressure, atrial fibrillation, diabetes, congestive heart failure, recent stroke and anemia, and a recent spike of elevated creatinine level."

After "several weeks" of taking olmesartan, during a teleconference call with his cardiologist, who was also employed by Kaiser, Ammons was told that his "creatinine level had spiked from a baseline of 2.1 to a dangerous 5.2" and that he should "immediately cut the dosage of Olmesartan in half." A couple days later, on January 8, 2024, in an e-mail sent to Ammons, Dr. Jitjai told Ammons that his "kidney suffers from a severe acute kidney injury and you have to go to [the] nearest Kaiser urgent care as soon as possible." Dr. Jitjai also told Ammons to "STOP [O]lmesartan . . . when your kidney are [sic] in an acute injury, you should stop this type of medication."

Ammons went to "Overlake urgent care for evaluation of worsening renal function." Ammons was admitted to Overlake Emergency Department for "acute on chronic kidney disease secondary to obstruction and likely intrinsic renal disease."

At Overlake, Dr. Brian Winters "implanted a stint in [Ammons'] kidney." Ammons experienced pain urinating and blood dripping out of his penis, and

---

[1] On appeal of an order granting summary judgment, we view all facts and reasonable inferences in the light most favorable to the nonmoving party, Ammons. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

"needed and received 5 quarts of blood." Thereafter, Ammons underwent a catheter procedure whereupon "two or three female aides" tried to "insert a catheter through my penis" to address the blood dripping. Ammons claimed the aides were joking and laughing, while forcefully inserting an "improper sized catheter," causing "hours of intense trauma and humiliation." The next morning, Dr. Brian Winters examined Ammons and "exclaimed, in substance, 'Well no wonder, they put the catheter in the wrong place' " and proceeded to adjust the catheter.

Ammons sued Kaiser, claiming Dr. Jitjai was negligent for prescribing olmesartan, given his myriad other health issues, which directly caused his physical injury and economic damage. Ammons also filed a "Medical Negligence/Malpractice" claim against Overlake, contending the staff used the wrong size catheter and placed it in a wrong location which caused him pain and distress. The medical care by Dr. Winters at Overlake is not part of Ammons' lawsuit.

Kaiser and Overlake both filed motions for summary judgment. Kaiser contended that Ammons could not support his claims for medical negligence because there was no "competent medical expert testimony that, on a more probable than not basis, to a reasonable degree of medical certainty, Dr. Jitjai fell below standard of care in prescribing olmesartan and proximately caused [Ammons'] injuries." Overlake contended that Ammons' claim lacked the requisite expert testimony to establish that Overlake violated its standard of care or proximately caused Ammons' alleged injuries.

3

On June 27, 2025, following a hearing, the court granted Kaiser's and Overlake's motions for summary judgment. The trial court stayed the entry of its orders to allow Ammons to present competent medical expert testimony related to the standard of care and proximate causation of alleged injuries related to all claims.

Ammons moved for reconsideration and disclosed as expert witnesses Dr. Jitjai and Kaiser's expert Dr. Henry Mroch. The superior court denied Ammons' motion for reconsideration.

Ammons timely appealed.

ANALYSIS

Ammons is representing himself on appeal. Self-represented litigants are "bound by the same rules of procedure and substantive law as attorneys." [2] Westberg v. All-Purpose Structures Inc., 86 Wn. App. 405, 411, 936 P.2d 1175 (1997).

We review orders on summary judgment de novo, with the appellate court engaging in the same inquiry as the trial court. DeYoung v. Providence Med. Ctr., 136 Wn.2d 136, 140, 960 P.2d 919 (1998). Summary judgment is proper when

---

[2] "The appellant has the burden of perfecting the record so that the court has before it all the evidence relevant to the issue." RAP 9.2; 9.6; In re Marriage of Haugh, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990). If a party seeking review intends to argue that a trial court's decision is not supported by the evidence, the party should designate all records and evidence relevant to the disputed decision. See RAP 9.2(b). Here, the appeal record, including the designation of clerk's papers, statement of arrangements, and the verbatim report of proceedings, were filed beyond the ordered deadline, but there was no motion to strike the untimely submissions. Instead, the respondents raised the issue for the first time in their briefing, after fully briefing the merits based on the complete record. Under the circumstances where we have a sufficient trial record, and parties briefed the issues based on the entire record, this court can "waive or alter the provisions of any of these rules and enlarge . . . the time within which an act must be done in a particular case in order to serve the ends of justice." RAP 18.8(a).

there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. DeYoung, 136 Wn.2d at 140; CR 56(c). The moving party bears the initial burden of establishing that there are no disputed issues of material fact. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party satisfies its burden, then the burden shifts to the nonmoving party to establish there is a genuine issue for the trier of fact. Young, 112 Wn.2d at 225. "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

There is no dispute that Ammons' cause of action is based on a tort for alleged injuries occurring as a result of health care. Accordingly, his claims are governed by chapter 7.70 RCW. Under RCW 7.70.030(1), the plaintiff must establish "[t]hat injury resulted from the failure of a health care provider to follow the accepted standard of care." Under RCW 7.70.040, the plaintiff must prove that the health care provider "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs." RCW 7.70.040(1)(a). The plaintiff also must prove proximate cause. RCW 7.70.040(1)(b).

"The applicable standard of care and proximate causation generally must be established by expert testimony." Grove v. PeaceHealth St. Joseph Hosp., 182 Wn.2d 136, 143-44, 341 P.3d 261 (2014). "Medical facts in particular must be proven by expert testimony unless they are 'observable by [a layperson's] senses and describable without medical training.' " Harris v. Robert C. Groth,

MD, Inc., 99 Wn.2d 438, 449, 663 P.2d 113 (1983) (quoting Bennett v. Dep't of Labor & Indus., 95 Wn.2d 531, 533, 627 P.2d 104 (1981)).

An inference of negligent conduct below the standard of care may be proved by circumstantial evidence, under the doctrine of res ipsa loquitur. Miller v. Jacoby, 145 Wn.2d 65, 74, 33 P.3d 68 (2001).

The following three criteria must be met for res ipsa loquitur to apply:

(1) [T]he occurrence producing the injury must be of a kind which ordinarily does not occur in the absence of negligence; (2) the injury is caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the injury-causing occurrence must not be due to any contribution on the part of the plaintiff.

Miller, 145 Wn.2d at 74 (quoting Howell v. Spokane & Inland Empire Blood Bank, 114 Wn.2d 42, 58, 785 P.2d 815 (1990)).

In this case, Ammons argues that his renal system shutdown would not have occurred absent the alleged negligence of Dr. Jitjai prescribing him olmesartan. We disagree because the occurrence of renal system failure could have occurred, absent olmesartan, given Ammons' medical conditions of "high blood pressure, atrial fibrillation, diabetes, congestive heart failure, recent stroke and anemia, and a recent spike of elevated creatinine level." Critically, the use and purpose of olmesartan, and its effects, given his other medical conditions, cannot be described without medical training. Thus, res ipsa loquitur does not apply and expert testimony is needed to assert negligence by Dr. Jitjai under this circumstance.

Similarly, res ipsa loquitur does not apply in the claim against Overlake. Ammons argued that his "intense trauma and anguish" would not have occurred

absent the medical staff choosing the wrong size catheter and inserting it in a wrong location. We disagree, because Ammons' experiencing pain with the catheter insertion could happen, absent the alleged negligence of the medical staff at Overlake. Critically, knowing what size of catheter to choose, where to insert the catheter, and the insertion process, are practice areas that cannot be described without medical training. While it is true that Dr. Winters adjusted Ammons' catheter, which could mean that the insertion may not have been proper, this fact alone is insufficient to infer negligence. Negligence cannot be inferred from a bad result. Reyes v. Yakima Health Dist., 191 Wn.2d 79, 89, 419 P.3d 819 (2018). Thus, under this set of facts, expert testimony is required to establish standard of care and causation. [3]

Ammons attempts to demonstrate a genuine issue of material fact by arguing that he should be allowed to "extract needed testimony from Defendant's expert witness[es]." Notwithstanding that one expert he listed is Dr. Jitjai, a party he sued, and the other expert is Dr. Mroch, whose declaration does not help Ammons' position, Ammons did not brief what testimony, if any, these experts could give that could be favorable to his position. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument").

---

[3] Ammons, citing Putman v. Wenatchee Valley Med. Ctr., P.S., 166 Wn.2d 974, 216 P.3d 374 (2009), contends the trial court denied him access to the court by requiring him to supply the requisite expert testimony. Putnam is inapposite because in that case, the plaintiffs argued that RCW 7.70.150, which has since been repealed, was unconstitutional because it burdened the right of access to courts and violated the separation of powers. 166 Wn.2d at 979-80. Here, Ammons does not contend any constitutional violations of RCW 7.70.030, .040. or any relevant provision in chapter 7.70 RCW.

7

In his declaration, Dr. Mroch, a nephrologist who provides care to "many patients who suffer from complex medical histories . . . just like Plaintiff Mr. Ammons," opined that "[t]he care provided by Duangporn Jitjai, MD, to Plaintiff Mr. Ammons was within standard of care" and "[t]here is no evidence that the care provided by Dr. Jitjai to Mr. Ammons was the proximate cause of Mr. Ammons' alleged damages." Additionally, Dr. Mroch opined that "[t]he Olmesartan was not the proximate cause of Mr. Ammons' acute kidney injury," and that the "ultrasound of the kidneys and bladder reveal[ed] that the proximate cause . . . was the obstruction from a renal stone that measured 7.9 mm." Finally, Dr. Mroch stated that "[a]ll of my opinions are given on a more probable than not basis, to a reasonable degree of medical certainty."

Without a genuine dispute as to the alleged negligence of Dr. Jitjai at Kaiser and of the medical staff at Overlake, there is no claim of negligence against Kaiser or Overlake based on vicarious liability.

Finding no error made by the superior court in dismissing all claims, we affirm.

_____, J.

WE CONCUR:

_____, J.

_____, ACJ

8